BONE VS. THE STATE.

Slaves are indictable for an assault and battery, under the constitution and laws of this State.

Where slaves are guilty of offences against the persons or property of individuals, less than felony, they are not indictable, under the Statute, until the master has had an opportunity to compound with the injured party, and refuses or or neglects to do so.

When there are exceptions in the enacting clause of a Statute, it is necessary to negative them in an indictment, in order that the description of the crime may, in all respects, correspond with the Statute. And so, in an indictment against a slave for a crime less than felony, it is necessary to aver that the master had refused to compound with the injured party

*Appeal from the Circuit Court of Lafayette county.*

The Hon. THOMAS HUBBARD, Circuit Judge.

CUMMINS & GARLAND for the appellant.

A slave is but a mere chattel interest; and as such cannot be regarded as capable of being in the peace of the State. *Wheeler's Law of Slavery*, 243; 2 *Hill S. C. Rep.*, 453; 2 *Bailey S. C.* 98; 2 *Bay S. C. R.* 700.

If indictable at all, it is by statutory provision: and the Statute should be strictly complied with: and under the Statute, (*Dig. p.* 379, *sec's* 4 and 5) there must be a demand by the injured party, or some one for him, and a refusal on the part of the master to compound and punish the slave before any trial can be had; and these being necessary conditions the indictment should have alleged such demand and refusal.

JORDAN for the State.

The 4th *sec. ch.* 51, *Dig.* merely confers a *privilege* on the master of a slave to compound with the injured party; which

he may use or not. It is not the duty of the State to apply to the master to compound.

It is submitted that *sec's* 3, 4 and 5 ch. 51, apply to civil actions, to recover damages, by the party injured; and not to criminal prosecutions.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

BONE was indicted in the Lafayette Circuit Court, for an assault and battery upon Caroline Brown, a white woman. The indictment is in the form ordinarily used in the prosecution of white persons for assaults and batteries, except that it alleges BONE to be a negro slave, and the property of MADISON SIMS.

The counsel for the defendant moved to quash the indictment on two grounds:

1st. That, by law, a slave could not be indicted for the offence charged against *Bone*.

2. That if he could, the indictment does not allege that the master of the slave refused to compound and pay the damages sustained, if any, in consequence of the offence charged.

The Court overruled the motion: the counsel for Bone interposed the plea of not guilty: upon which he was tried by a jury, found guilty, and his punishment assessed at three hundred lashes: but the Court regarding it as excessive, reduced the number of lashes, to *seventy-five*. *Bone* was accordingly sentenced to receive that number of stripes: and judgment rendered against his master for the costs of the prosecution, etc.

The counsel for Bone moved for a new trial, which was overruled, and they excepted. They also moved in arrest of judgment, on the same grounds taken in the motion to quash the indictment: and the motion being overruled, an appeal was taken to this Court.

The counsel for the appellant here do not complain of the refusal of the Court to grant a new trial, but insist that the indictment should have been quashed, or the judgment arrested, etc.

1. The objection that a slave is not indictable for an assault and battery, is urged upon the ground that slaves are merely personal chattels, and not legally capable of committing crime,

etc. There is nothing in this objection. It is true, that slaves are regarded as property: but, for many purposes, our laws also treat them as human beings, and as such, they are held accountable to the public, for criminal conduct. *Const. of Ark. art.* 7, *sec.* 1 *Dig. ch.* 51, *part* 12, etc., etc. It would neither comport with the spirit of our laws, nor the sentiments of our people, to treat slaves as mere chattels in all respects. Though inferior in mental and moral endowments to the white race, and occupying a subordinate position, in the order of Providence, yet they are rational beings, and as such, are not only responsible for crimes committed by them, but are under the protection of the laws; and whilst their masters may lawfully exercise over them all necessary and proper authority to keep them in subjection and enforce obedience and submission, yet they are amenable to the laws for any wanton and inhuman treatment of their slaves. *Wharton's Criminal Law*, 403 to 410 *and notes.* Dennis vs. The State, 5 *Ark.* 233. Charles vs. The State, 6 *Eng.* 405. Austin vs. State, 14 *Ark.* 555. McConnell vs. Hardeman, 15 *Ib.* 152.

2. The second objection to the indictment is founded on the following provisions of the Statute in relation to the punishment of slaves, etc.

" In all trespasses and offences, less than felony, committed by any slave, on the person or property of another person, the master may compound with the injured person, and punish his own slave, without the intervention of any legal trial or proceeding, and the compounding and satisfaction to the person injured, shall be a bar to any further prosecution. *Dig. ch.* 51 *part* 12 *sec.* 4 *p.* 379.

" In all *cases where* the master *refuses to compound*, and pay the damages sustained by the act of his slave, *such slave shall be prosecuted*, and punished by the proper Court having jurisdiction of the offence, and the damages and costs recovered shall be adjudged against the master." *Ib. sec.* 5.

By looking over the provisions of the Digest in relation to the punishment of slaves, it may be seen that for all felonies, etc.,

they are answerable to the public, and subject to indictment, trial and punishment, in the Courts, unconditionally.

But where they are guilty of offences against the persons or property of individuals, less than felony, the Legislature have thought proper to entrust their punishment, and the compensation of the injured party, to the judgment, discretion and sense of justice of the master, in the outset: and if he refuses to compound with the injured party, etc., then the slave is subject to indictment, etc. But if the master compound and punish the slave, this will bar an indictment. If he compensate the injured party, he has no occasion to appeal to the Courts. The liability of the slave to indictment is contingent upon the *refusal* of the master to compound, etc.

If the injured party desires to bring a civil action against the master to recover damages for the trespass of his slave, he may do so under the provision of *section* 3 of the act above referred to, without application to, and refusal by, the master to compound, etc. (See *McConnell vs. Hardeman*, 15 *Ark*. 151. *Ridge vs. Featherston Ib*. 159.) But if the injured party would punish the slave, and subject the master to damages and costs by means of an indictment against the slave, the refusal of the master to compound, etc., is a pre-requisite to the institution of the prosecution.

The refusal of the master to compound, etc., may be captious: or it may be based upon a supposition by him that the injured party demands excessive punishment of the slave, or an exorbitant amount of damages: or the master may agree to compound, and fail to comply with the terms of the agreement, which would be tantamount to a refusal to compound. No matter what considerations may influence him to refuse to compound, if he has had an opportunity of doing so, and does not avail himself of it, the slave becomes subject to indictment and the master to the costs, etc., if the slave be convicted.

But, surely, it is a reasonable provision of law, that the master should first be applied to, and have an opportunity of punishing his slave, and compensating the injured party for the trespass, before he is subjected to the inconvenience, loss of labor

and costs of having the slave arrested, and taken off to Court to go through the forms of a legal prosecution. See *White vs. Chambers*, 2 *Bay* 75.

The refusal of the master to compound being a pre-requisite to indictment, the further inquiry arises, whether the refusal should be averred in the indictment, or whether the matter must come from the defence by way of plea.

When a Statute contains provisos and exceptions in distinct clauses, it is not necessary to state in the indictment, that the defendant does not come within the exceptions, or to negative the provisoes it contains. But, on the contrary, if the exceptions themselves are stated in the enacting clause, it will be necessary to negative them in order that the description of the crime may, in all respects, correspond with the Statute. 1 *Chitty's Cr. L.* 233. *Wharton's Cr. L.* 138. *Matthews vs. State*, 2 *Yerger* 236. *State vs. Adams*, 6 *New Hamp. R.* 532.

Thus *sec.* 5 *art.* 5, *part* 8, *ch.* 51 *Digest*, *p.* 370, makes it a penal offence for any person to keep open a store or dram-shop, etc., or retail goods, etc., on the Sabbath: and *sec.* 6 makes *charity* or *necessity* on the part of the customer, a justification, etc. The exception being a distinct provision, the indictment need only aver the offence, and the matter of justification must come from the defendant. *Shover vs. State*, 5 *Eng. R.* 259.

*Sec.* 2 *ch.* 159, *Digest*, *p.* 963, declares that no person shall keep a tavern, etc., for the retail of ardent spirits, etc., unless he shall first obtain a license, etc. Here, the exception in favor of licensed retailers is contained in the enacting clause, and it is necessary to aver the want of a license in the indictment. See *Hensley vs. State*, 1 *Eng.* 252. *Wharton's Cr. L.* 138. Other illustrations of the two rules may be found in the authorities above cited.

In the case now before us, the very section which subjects the slave to indictment for an offence against the person or property of an individual, less than felony, makes the refusal of the master to compound with the injured party, etc., a pre-requisite to the indictment.

We think, therefore, that the refusal of the master to compound should be stated in the indictment.

According to the testimony of *Mrs. Brown*, the conduct of *Bone* toward her was rude and insolent, and he no doubt deserved to be flogged for it, but it was the duty of her, or her husband, or some one acting in her behalf, to complain first to the master, and give him an opportunity of compounding, etc., and of chastising his own slave: and if he had refused, then the slave was subject to indictment; and the master to the costs, etc.

In this case the indictment contains no statement that the master of the slave had refused to compound, nor was it proven on the trial that any application had been made to him for that purpose.

The judgment of the Court below is reversed, and the cause remanded with instructions to arrest the judgment, etc.

Absent Hon. THOMAS B. HANLY.