## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

ROY LAWAETZ,

               PLAINTIFF,

       V.

DONOVAN HAMM,

               DEFENDANT.

SX-11-CV-092

ACTION FOR TORTIOUS INTERFERENCE ACTUAL AND PUNITIVE DAMAGES

JURY TRIAL DEMANDED

Cite as: 2020 VI Super 039U

<u>Appearances:</u>

**Roy Lawaetz**
*Pro Se*

**Robert A. Waldman, Esq.**
Hamm Law Firm
St. Croix, USVI
*For the Defendant*

## <u>MEMORANDUM OPINION and ORDER</u>

**WILLOCKS, Presiding Judge**

¶1    **THIS MATTER** is before the Court on the Defendant Donovan Hamm (hereinafter "Defendant") Motion for Summary Judgment filed on April 13, 2015. The Plaintiff Roy Lawaetz (hereinafter "Plaintiff") filed an Opposition on August 31, 2015. On September 21, 2015, the Defendant filed a Reply.

### BACKGROUND

¶2    In 2006 Erik Lawaetz (hereinafter "Erik") and his wife Jennie Lawaetz (hereinafter "Jennie") retained the Defendant to draft estate planning documents. (Def.'s Statement of Undisputed Facts ¶ 2.) The couple informed the Defendant that they previously executed estate

planning documents years ago but wanted to make some changes. ( ¶ 3.) As a result, the Defendant prepared a living trust agreement (hereinafter "2007 Trust") dated December 20, 2007, for the couple. (*Id.* ¶ 5.) On June 18, 2008, the couple decided that all of their assets should be held in a trust and had the Defendant amended the 2007 Trust. (*Id.* ¶ 6.) The amendment also stated how the couple's assets should be distributed amongst their three children upon their death. (*Id.* ¶ 7.)

¶3     The couple's three children include the Plaintiff, Mona Lawaetz Doane (hereinafter "Mona") and David Lawaetz (hereinafter "David"), who resides with the couple and requires special assistance with daily living functions. (*Id.*)  In 2009 the Plaintiff received a copy of the 2007 Trust and became upset with some of the provisions. (*Id.* ¶ 9.) One of the provisions that upset the Plaintiff was the life estate he received in a building next to the family home that he used as an art studio (hereinafter "Studio") and stayed in while in St. Croix. (*Id.* ¶ 13.) According to the 2007 Trust, the Plaintiff's life estate in the Studio would terminate upon certain conditions. (*Id.* ¶ 14.) The Plaintiff met with the Defendant numerous times in 2009 to discuss the 2007 Trust. (*Id.* ¶ 10.) However, in each meeting, the Defendant informed the Plaintiff that he did not represent him and that any changes would have to be approved by his parent prior to the documents being amended. (*Id.* ¶ 12.) On June 15, 2009, the parties along with Mona held a meeting in which the Plaintiff presented a note signed by Jennie stating that she did not request a terminating provision for the Plaintiff's interest in the Studio. (*Id.* ¶ 15.) During the meeting, the Defendant stated that he must have included the provision by mistake and that the error could easily be rectified. (*Id.* ¶ 16.) However, after the meeting, the Defendant recalled that Jennie had specifically requested that the life estate terminate upon certain conditions because she was concerned about the Defendant and his wife's abusive treatment of David. (*Id.* ¶ 16.)  That Jennie was concerned about David's

inability to defend himself against the Plaintiff after the couple's death. (*Id.* ¶ 17.) Thus, the provision was included as a means to combat Jennie's concerns. (*Id.*)

¶4     On August 11, 2009, the Plaintiff filed a grievance with the Virgin Islands Bar Association against the Defendant alleging misconduct and/or unethical behavior. (*Id.* ¶ 18.) On May 16, 2012, it was determined that there was no probable cause to believe that the Defendant had violated any of the Rules of Professional Conduct and the matter was dismissed. (*Id.* ¶ 26.) (*Id.* ¶ 18.) On March 30, 2010, prior to the grievance being dismissed the Defendant had Jennie sign an affidavit and meet with an attorney of her choosing to have the affidavit executed. (*Id.* ¶ 20.)

¶5     In the affidavit, Jennie stated that the Defendant had drafted the estate planning documents consistently with the couple's wishes and that she was satisfied with estate planning services provided by the Defendant. (*Id.* ¶ 20.) According to the affidavit, Jennie also acknowledged that she did sign the letter presented to her by the Plaintiff, pertaining to the termination provision of the life estate provision, but that she did so without reviewing the document first. (*Id.* ¶ 22.)

¶6     On April 8, 2010, Erik died and pursuant to the 2007 Trust all of the assets were placed in a sub-trust known as the "Survivor's Trust" under the complete control of Jennie. (*Id.* ¶ 22.)   The 2007 Trust provided that the Survivor's Trust could be amended at any time by the survivor of Erik and Jennie. (Def.'s Memo at 5.) On April 27, 2010, Jennie amended and restated the provisions of the Survivor's Trust. (*Id.*) Since that time Jennie has amended the Survivor's Trust on December 21, 2010, and August 19, 2011. (*Id.*) The amended Survivor's Trust (hereinafter "2012 Trust") controls the disposition of the couple's assets upon Jennie's death.

## STANDARD OF REVIEW

¶7     Motions for summary judgment are governed by Virgin Islands Rule of Civil Procedure 56. V.I.R. Civ. P. 56. A motion for summary judgment shall be granted, "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1] "A dispute is genuine if, based on the evidence in the summary judgment record, a reasonable jury could find in favor of the non-moving party."[2]"As to materiality, only those facts that 'might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"[3]

¶7     "The moving party bears the initial burden of pointing out to the court that there is no genuine issue of material fact"—or in other words, "an absence of evidence to support the nonmoving party's case."[4] The non-moving party then has the burden of setting out specific facts showing a genuine issue for trial.[5] The court may consider the cited materials and other materials in the record.[6] But "the court may not weigh the evidence or determine the credibility of witnesses." *See Williams*, 50 V.I. at 194-95. The Court "must consider the record evidence in the light most favorable to the non-moving party." *See Rymer*, No. 2017-0010, 2018 V.I. Supreme LEXIS 1, at *6 (citations omitted).

## DISCUSSION

¶8     The Defendant is requesting summary judgment as to all Counts of the Plaintiff's Complaint to wit: Count I: Tortious Interference with Expected Inheritance; Count II: Negligence; Count III: Doctrine of Deviation Applied to Trust; and Count IV: Intentional Infliction of

---

[1] ." V.I. R. Civ. P. 56(a). *See also Rymer v. Kmart Corp.*, No. 2017-0010, 2018 V.I. Supreme LEXIS 1, at *5 (Jan. 18, 2018) (A summary judgment movant is entitled to judgment as a matter of law if the movant can demonstrate the absence of a triable issue of material fact in the record.). *See also Walters v. Walters*, 60 V.I. 768, 794 (VI. 2014) (citations omitted).

[2] *See Martin v. Martin*, 54 V.I. 379, 387 (2010) (citations omitted).

[3] *Id.*

[4] *Id.* at 386-87. *See also Williams v. United Corp.*, 50 V.I. 191, 194 (VI. 2008) (citations omitted).

[5] *Rymer*, No. 2017-0010, 2018 V.I. Supreme LEXIS 1, at *5-6 (Once the moving party has identified the portions of the record that demonstrate no issue of material fact, "the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in his favor.").

[6] *See* V.I. R. Civ. P 56(c)(3).

Emotional Distress. (Mot. at 19.) Due to the Plaintiff seeking a reward where there is no loss of damages or general issues of material fact. (*Id.*)

¶9 The Plaintiff claims that the Defendant's Motion should be denied because there are sufficient factual disputes as to whether the Defendant interfered with his expected inheritance, the competency of Erik to execute the 2007 Trust. (Opp'n. at 30.) As well as the Defendant acquiescence to the undue influence of Mona and her son Julian Pardo de Julian (hereinafter Julian) and the Defendant's negligence. (*Id.*)

¶10 As a pretextual matter the Court must first note that on June 18, 2012, the Probate Court issued a Final Adjudication and Decree holding that the 2007 Trust was the sole legatee of the decedent Erik and ordered that the 2007 Trust was the owner of the property of such.[7] Hence, this Court will recognize the Survivor's Trust dated June 6, 2012 (hereinafter "2012 Trust") as the valid estate plans of Erik and Jennie. The Plaintiff has brought this matter against the Defendant Attorney Hamm and has not contested the validity of the estate documents in his complaint ergo, the Court will not address those issues.[8]

## I. Tortious Interference with Expected Inheritance

¶11 The Defendant argues that although the Virgin Islands has yet to recognize a claim for tortious interference with ones expected inheritance, Count I of the Plaintiff's Complaint must be dismissed because the Restatement (Second) of Torts § 774B requires proof that the defendant engaged in fraud, duress, or other tortious means to interfere with ones expected inheritance, which the Plaintiff has failed to allege. (Memo. at 12.) Additionally, the Plaintiff argues that both the case

---

[7] See Final Adjudication and Decree dated June 18, 2012 of Case No. SX-10-PB-41.

[8] See *Marshall v. Marshall*, 547 U.S. 293, 312 (2006) ("[T]he tort claim seeks an *in personam* judgment against [the defendant], not the probate or annulment of a will"); *see also Golden v. Golden*, 382 F.3d 348, 364 (3rd. Cir. 2004) ("Despite its entwinement with, probate, a cause of action for tortious interference with inheritance is one brought *in personam*.")

law and Section 774B require the Plaintiff to prove that he actually had an expected inheritance. (*Id.* at 13.)

¶12    The Plaintiff claims that a genuine issue of disputed facts remains because the Defendant knew Erik did not have the mental capacity to execute the 2007 Trust. (Opp'n. at 22.)  That the Defendant knowingly allowed Mona and Julian to exercise undue influence on Erik and Jennie in drafting the 2007 Trust. (*Id.*)

¶13    As acknowledged by both parties, courts in this jurisdiction have yet to address a claim for intentional interference with an expected inheritance.  There is no local statutory cause of action for intentional interference with inheritance in this jurisdiction.  However, Section 774B of the Restatement (Second) of Torts states that "[o]ne who by frauds, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."[9]

¶14    However, the Supreme Court of the Virgin Islands has stated, courts may not give "mechanistic and uncritical reliance [to] the Restatements."[10]

> [T]he Supreme Court, when considering a question not foreclosed by prior precedent from this Court, must perform a three-part analysis as set forth in *Banks*. The first step in the analysis - whether the Virgin Islands courts have previously adopted a particular rule - requires the Superior Court to ascertain whether any other local courts have considered the issue and rendered any reasoned decision upon which litigants may have grown to rely. The second step - determining the position taken by a majority of courts from other jurisdictions - direct the Superior Court to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved ta particular question. Finally, the third step in the *Banks* analysis - identify the best rule for the Virgin Islands - mandates that the Superior Court weigh all persuasive authority both within the and outside of the Virgin Islands, and determine the

---

[9] Restatement (Second) of Tort Section 774B comment b.

[10] *Gov't of the Virgin Islands v. Connor*, 2014 V.I. Supreme LEXIS 17 ** (V.I. Super. Ct. 2014)(citing Banks v. Int'l Rental & Leasing Corp., 2011 V.I. Supreme LEXIS 46 ** (S. Ct. 2011).

appropriate common law rule based on the unique characteristics and needs of the Virgin Islands. *Connor*, 2014 V.I. Supreme LEXIS at \*8-9(citation omitted).

### A. *Virgin Islands Precedent*

¶15    In reviewing the decision of the courts of our jurisdiction - the Supreme Court, Territorial Court, Superior Court, District Court, and even the Third Circuit (prior to the autonomy of the Supreme Court of the Virgin Islands) - no cases addressing the above issue were found. Thus, there is no current precedent within the Virgin Islands.

### B. *Majority Approach*

¶16    An exhaustive search revealed that this tort has been adopted by other jurisdictions when a defendant's conduct causes the decedent to transfer property that would have gone to the plaintiff upon the decedent's death or as an inter vivos gift when no other adequate remedy exists in probate. For example, the Supreme Court of Arkansas failed to adopt this tort where the Plaintiff filed a tortious interference claim after attempting to have a will set aside. [11] According to the Arkansas Supreme Court, the plaintiff would have had an adequate probate remedy if her will contest had been successful. [12] The court refused to allow what it characterized as a "collateral attack" on the probate decree, while also noting that most appellate decisions pertaining to the matter only allowed such claims when probate relief was not available. [13]

---

[11] *Wilson v. Fritschy*, 132 N.M. 785, 789 (N.M. Ct. App. August 20, 2002)( citing *Jackson v. Kelly*, 345 Ark. 151, 44 (Ark. 2001)

[12] *Id.*

[13] *Id:* see e.g., *Moore v. Graybeal*, 843 F.2d 706, 711 (3d Cir. 1988); *DeWitt v. Duce*, 408 So. 2d 216, 217, 220-21 (Fla. 1981); *In re Estate of Knowlson*, 204 Ill. App. 3d 454, 562 (Ill. App. Ct. 1990); *Minton v. Sackett*, 671 N.E.2d 160, 162 (Ind. Ct. App. 1996); *Graham v. Manche*, 974 S.W.2d 580, 583 (Mo. Ct. App. 1998); *Firestone v. Galbreath*, 895 F. Supp. 917, 927 (So. D. Ohio 1995). *See generally* George L. Blum, *Action for Tortious Interference with Bequest as Precluded by Will Contest Remedy*, 18 A.L.R.5th 211 (1994).

¶17    The Supreme Court of Illinois also rejected a tortious interference claim that was brought after an unsuccessful will contest, concluding that the claim constituted a "second bite of the apple" by invalidating a will that the probate court had already found valid.[14] There the plaintiff brought the claim against a non-beneficiary two years after the will had been probated.[15]

¶18    The Court of Appeals in New Mexico also refused to recognize the tort holding that there "is no common-law right of inheritance" but rather "[t]he right of inheritance is purely a creature of statute."[16] Therefore, the only right to contest a will is by statute which should not be "circumvented by calling a will contest an action in tort."[17] In support of its decision, the court noted that it was obligated to protect the legislatures decision to enact the Probate Code for issues such as will contest which "require a greater burden of persuasion than an independent action in tort."[18]

¶19    Other courts such as the Superior Court of Rhode Island, have decided to recognize tortious interference with expected inheritance as a "natural extension of the common law", rather than a creation of an entirely new cause of action.[19] In reaching its decision the Court noted that tortious interference had continuously evolved in its jurisdiction since 1934, with the adopting of tortious interference with contractual relations.[20] And that tortious interference with expected inheritance did not conflict with the Rhode Island probate statute because "[a] tort claim does not become a

---

[14] *Robinson v. First State Bank*, 97 Ill. 2d 174, 184 (Ill. 1983).
[15] *Id.*
[16] *Wilson*, 132 N.M. 790; (*citing Brionez v. Gonzales (In re Estate of Brionez)*, 8 Neb. App 913, 917 (Neb. Ct. App. 2000)).
[17] *Wilson*, 132 N.M. 790; (citing *Dragan v. Miller*, 679 F.2d 712, 717 (7th Cir. 1982)).
[18] *Wilson*, 132 N.M. 790.
[19] *Arms. United for Life v. Legion of Christ of N. Am., Inc.*, 2017 R.I. Super. LEXIS 98 at * (R.I. Super. Ct. Jan. 4, 2017).
[20] *Id.*

will contest simply because it arises out of facts relating to the making or unmaking of a will."[21]

Although not all states have adopted the tort nearly half of the states have.[22]

¶20    Of those states that have adopted the tort many apply the Restatement (Second) of Torts §

774B or some close variation.[23] According to the Restatement tortious interference of inheritance

requires:

> (1) The existence of an expectancy to inherit;
>
> (2) Reasonable certainty that the expectancy would have been realized but for the
>
> interference
>
> (3) Intentional interference with the expectancy
>
> (4) Tortious conduct involved with the interference such as fraud, duress, or undue
>
> influence
>
> (5) Damages[24]

A review of the various jurisdictions that acknowledge that torts show that the majority of

jurisdictions apply the Restatement.

---

[21] *Id*; (citing *Allen v. Hall*, 328 Ore. 276, 278 (1999)

[22] *Id*; *see Umsted v. Umsted*, 446 F.3d 17, 20 (1st Cir. 2006)("at least 23 states have recognized some for of the tort") (citing Diane J. Klein, *A Disappointed Yankee in Connecticut (or Nearby) Probate Court: Tortious Interference With Expectation of Inheritance – A Survey With Analysis of State Approaches in the First, Second, and Third Circuits*, 66 U. Pitt. L. Rev. 235, 240 (2004).

[23] *See e.g., Fitzpatrick v. Hoehn*, Ala. *LEXIS* 22, at *30-31 (Ala. 2018); *Strunk v. Allen Nelson Swartz*, 2007 Ariz. Super. LEXIS 230, at *1-2 (Ariz. 2007); *Fenton v. Pearson*, 2004 Ark. App. LEXIS 623, at *3-4; *Beckwith v. Dahl*, 2012 Cal. App. LEXIS 528, at ****9-22 (C. D. Cal 2012), *Ingersoll v. Ingersoll*, 950 A.2d 672, 699 - 701(D.C. 2008); *Mulvey v. Stephens*, 250 So. 3d 106, 109-11 (Fla. Dist. Ct. App. 4th District. 2018); *Losser v. Bradstreet*, 145 Idaho 670, 675-77 (2008); *In re Estate of Ellis*, 236 Ill. 2d 45, 52 (2009). *Scott v. Dillman*, 2018 Ind. App. LEXIS 426, at 8 (Ind. Ct. App. 1996); *Dawson v. Tucker*, 2002 Iowa App. LEXIS 608, at *5 (Iowa Ct. App. 2002); *Advance Ins. Co of Kan. v. Topeka Rescue Mission*, 2010 Kan. App. Unpub. LEXIS 484, at *8-9 (Kansas 2004); *Cote v. Cote*, 2016 Me. LEXIS 103, at *** 7 ( Me. Super Ct. 2017).

[24] *Fenton v. Pearson*, 2004 Ark. App. LEXIS 623, at *3-4

C. *The Best Rule for the Virgin Islands*

¶21    In this jurisdiction Title 15 of the Virgin Islands Code and the Uniform Probate Code governs decedents' estates and fiduciary relations. Moreover, the Virgin Islands have sound laws regarding will contest and undue influence. However, because the Court finds that tortious interference with inheritance is a cause of action separate and distinct from a will contest and in order to maintain consistency, with most jurisdictions as well as the Third Circuit this Court will recognize the tort and adopt the Restatement (Second) of Tort Section 774B, as the best rule in the Virgin Islands.

### i.    *Existence of an Expectancy to Inherit*

¶22    In applying the Restatement to the present matter, Section 774B defines inheritance as "any devise or bequest that would otherwise have been made under a testamentary instrument or any property that would have passed to the plaintiff by intestate succession."[25]

¶23    The Defendant argues that the Plaintiff does not have an expected inheritance because he cannot simply rely on the fact that he is a child of Erik and Jennie to prove that he had an expected inheritance. (Memo. at 14.) In support of this assertion, the Defendant cites non-binding case law which states that a high degree of certainty is required to establish that a testator would have made a particular legacy and therefore a parental relationship is insufficient to prove the expectancy of inheritance. (Memo. at 14; citing *Morrill v. Morrill*, 712 Aa.2d 1039, 1042 (Me. 1998). However, this case law is not persuasive and the plain language of Section 774B comment d explicitly states complete certainty is not required.[26]

---

[25] Restat. 2d of Torts, § 774B, comment c.
[26] Restat. 2d of Torts, § 774B, comment d.

¶24    Nevertheless, it is clear that the Plaintiff has a real inheritance expectancy as he is a named beneficiary of the 2007 Living Trust as well as the Survivor's Trust. In addition, the Defendant has stated in his own Motion and provided evidence that Jennie does intend for the Plaintiff inherit from her estate.

   *ii.    Reasonable Certainty of Realization but for the Defendant's Interference*

   The Restatement states:

   that there can be recovery only for an inheritance or gift that the other would have received but for the tortious interference of the actor. This means that, . . . there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of death of the testator . . . if there had been no such interference. In many cases this can be shown with complete certainty.... In many others, as when a will is made, revoked or changed during his lifetime, complete certainty is impossible. It is not required. If there is reasonable certainty established by proof of a high degree of probability that the testator would have made a particular legacy or would have changed it if he had been persuaded by the tortious conduct of the defendant and there is no evidence to the contrary, the proof may be sufficient that the inheritance would have otherwise been received. The fact that it was the defendant's tortious act that makes it not possible to prove with certainty may be taken into consideration by the court.[27]

Therefore, the Plaintiff must establish with reasonable certainty that the inheritance would have been realized but for the Defendant's conduct.[28] This does not require complete certainty but rather "proof of a high degree of probability that the" testator would have made the bequest if not for the defendant's conduct.[29]

¶25    The Plaintiff is basing his Complaint for expected inheritance on Erik and Jennie 1986 Revocable Trust, in which he claims he would have inherited one-third shares of Erik and Jennie's estate along with Mona and David, as well as complete ownership of the Studio without any

---

[27] Restat. 2d of Torts, § 774B, comment d (1979).
[28] Restat. 2d of Torts, § 774B.
[29] *Id.*

conditions or restrictions to transfer his interest to his daughters Verena and Anitanja. (Opp'n. at 5-6.) The Plaintiff also claims that Verena and Anitanja were entitled to a 50/50 interest in Estate Balenbouche. (*Id.* at 5.) However, under Erik and Jennie's Living Trust he no longer has a one-third interest in his parent's assets and his interest in Estate Grande Anse, St. Lucia and the Lawaetz Family Foundation at Little La Grange, St. Croix have been decreased. (*Id.* at 6.) He also claims that the 2007 Trust only entitles him to a life estate in the Studio, which Mona can request to be terminated at any time with the remainder going to Mona and Julian. (*Id.*) Plaintiff further asserts that his daughters no longer have an interest in Estate Balenbouche but rather one-fourth interest now passes to Mona. (*Id.* at 5.) In support of his claim, the Plaintiff has provided a copy of the 2007 Trust, an affidavit from the Defendant conceding that he had included the life estate clause by mistake and a letter from Jennie to the Defendant stating that she wanted the terminable clause for the Studio removed because she did not authorize such provision. (Opp'n. Ex. B, D, and K.)

¶26    Conversely, the Defendant has provided evidence that under the 2012 Trust the Plaintiff will still inherit the Studio and that Jennie intentionally requested conditions on the Plaintiff bequest of the Studio in order to protect David from the Plaintiff. (Stmt. of Undisputed Fact Ex. A and D.) As well as evidence from Jennie acknowledging that she was concerned about the Plaintiff and his wife challenging the trust. (*Id.*) The Defendant also provided an affidavit by Jennie dated March 30, 2010, stating that the Defendant had repeatedly helped her and Erik with their estate planning needs in a manner that has been consistent with their wishes. (*Id.* at B.) In the affidavit, Jennie again acknowledges her concern regarding the Plaintiff contesting her estate plans as well as the Virgin Islands Bar Association claim brought against the Defendant by the Plaintiff. (*Id.*) Jennie states that she is not in support of the action and as a result reviewed the affidavit prior to signing it with Attorney Joel Holt. (*Id.*)

¶27    Despite the conflicting evidence the Plaintiff has successfully demonstrated that he was and still is a beneficiary of Erik and Jennie's estate plans. However, the Plaintiff has failed to establish that but for the Defendant's conduct, his inheritance would not have remained as stated in the 1986 Trust. In addition, the Plaintiff bases his claims on the changes between the 1986 Trust and the 2007 Trust however, it is the 2012 Survivor's Trust that is now operable.

¶28    Under the 2012 Trust the Plaintiff's daughters Verena and Anitanja will still inherit a one-fourth interest of Estate Balenbouche contrary to the Plaintiff's assertion. (*See* 2012 Trust.) The Plaintiff will inherit one-ninth of the trust property and a condominium unit out of the shares of the Lawaetz Family Corporation and Estate Grande Anse, St. Lucia will now be sold. (*Id.*) The 2012 Trust also states that the Plaintiff is entitled to a life estate in the Studio. His daughters will also receive their own one-half interest of Parcel 3 of Estate St. John where the Art Studio is located. (*Id.*) In addition, the 2012 Trust also includes a no-contest by which the Plaintiff will lose his inheritance if he decides to contest the validity of the will. (*Id.*)

¶29    Thus, upon a comparison of the 1986 Trust and the 2012 Trust the Court finds that although the Plaintiff interest has somewhat changed, this Court cannot be reasonably certain that the Plaintiff's interest would have remained the same but for the Defendant's conduct. Furthermore, given that Erik and Jennie's initial estate plans were executed in 1986 and Jennie was still living at the time this Complaint was filed, it is unreasonable for the Plaintiff to not expect that Erik and Jennie's wishes may have changed. Therefore, the Court finds that there is not a high probability that the Plaintiff would have received the same inheritance but for the Defendant.

### iii.    *Intentional Conduct*

¶30    According to the Defendant in 2006 he was retained by Erik and Jennie to draft estate planning documents. (Stmt. of Undisputed Fact Ex. A.) However, the Plaintiff claims that in 2004

Erik's mental health began to decline and despite the Defendant knowing that Erik's mental capacity was declining he continued to draft the estate documents on behalf of Erik and Jennie under the direction of Mona. (Opp'n. at 2.) Therefore, the Defendant assisted Mona who was also his client, in unduly influencing Erik and Jennie in the creation of the 2007 Trust to benefit Mona. (*Id.*) In support of this claim, the Plaintiff has provided a copy of affidavits from Jennie, and Mona with Attorney Joel Holt all attesting that Erik who was ninety (90) years old at the time and did not have the mental capacity to handle the family's legal matters pertaining to a separate legal action. (Opp'n. Ex. F, G, & H.)

¶31    Based on the foregoing allegations the Plaintiff is accusing the Defendant of assisting Mona in her undue influence of Erik and Jennie. However, this allegation does not establish that the Defendant's conduct in drafting the estate documents was to intentionally prevent him from the inheritance he was expected under the 1986 Trust.

   *iv.    Tortious Conduct*

¶32    According to Section 774B a defendant's conduct must be "independently tortious in character."[30] Generally, this requires the defendant to induce the third person into not making a bequest or gift by fraud, duress, defamation, tortious abuse of fiduciary duty or forgery.[31] In the absence of independently tortious conduct generally, there is no liability under Section 774B.[32]

¶33    Based on the allegations asserted in the Complaint and presented in the Opposition it is clear that the Plaintiff is not alleging that the Defendant's independent actions were tortious, but he aided one whose actions were tortious. In essence, he is accusing the Defendant of acting in

---

[30] Restat. 2d of Torts, § 774B, comment c (1979).
[31] *Id.*
[32] *Id.*

collusion with Mona. Therefore, the Defendant's conduct was not independent. Moreover, based on the record the Defendant's actions are also not tortious in character as they are not consistent with fraud, duress or undue influence. Rather in reviewing the evidence especially the email correspondences provided by the Plaintiff, it is clear that the Defendant was simply attempting to draft estate planning documents consistent with the wishes of Erik and Jennie. Thus, the Court finds that the Defendant's conduct was not tortious.

¶34    Given the aforementioned analysis, the Plaintiff has failed to demonstrate that there is a genuine issue as to any material fact regarding his claim for tortious interference with expected inheritance as such the Defendant shall be granted summary judgment as to Count I of the Complaint.

## II. Negligence

¶35    According to the Defendant he is entitled to summary judgment as to Count II because the Plaintiff has failed to establish any of the elements required to succeed on a claim for negligence. (Memo. at 15.) More specifically the Defendant claims that the Plaintiff has failed to establish that the Defendant owed him a duty or that such duty was breached. (*Id.*) In response, the Plaintiff argues that case law within the Third Circuit does recognize privity between beneficiaries of a trust and the drafting attorney. (Opp'n. at 26.)

¶36    The Supreme Court of the Virgin Islands has stated that it agrees with the Superior Court's assessment that the foundational elements of negligence are: (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff. [33] Whether an attorney is liable to a beneficiary of a will for his negligence

---

[33] *Machado v. Yacht Haven U.S.V.I., LLC.*, 2014 V.I. Supreme LEXIS 51, at **6 (V.I. 2014).

in drafting the will is an issue of first impression in this jurisdiction. Nevertheless, courts in the Third Circuit have held that in spite of the general rule that attorneys are not liable to third parties for negligence in the performance of their professional duties, that when an attorney undertakes a duty to one other than his client he may be liable for breaching a duty to the person intended to benefit from such performance.[34] In applying this same principle, the New Jersey Federal District Court held that an attorney may be liable to the beneficiary of a will for his negligence in drafting a will.[35] In reaching its decision the court not only looked at New Jersey state law but other jurisdictions and found that it was clear from the case law that attorneys whose negligence in drafting a will causes an intended beneficiary to lose their interest are liable to that beneficiary.[36]

¶37     In determining whether one is an intended beneficiary the court affirmed the lower courts application of Restatement (Second) of Contracts Section 302[37], which this Court adopted in *Lopez v. Renaissance St. Croix Carambola Beach Resort & Spa.*[38] Section 302 of the Restatement (Second) of Contracts states:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a
>
> promise is an intended beneficiary if recognition of a right to performance in the
>
> beneficiary is appropriate to effectuate the intention of the parties and either

---

[34] *Rathblott v. Levin*, 697 F. Supp 817 (D.N.J. 1988) (citing *Stewart v. Sbarro*, 142 N.J. Super. 581, 593 (App. Div. 1976).

[35] *Rathblott v. Levin*, 697 F. Supp 817 (D.N.J. 1988)

[36] *Rathblott*, 697 F. Supp 820; (citing *Biakanja v. Irving*, 49 Cal. 2d 647 (1958); *Lucas v. Hamm*, 56 Cal. 2d 583 (1961), *cert. denied*, 368 U.S. 987, 7 L. Ed. 2d 525, 82 S. Ct. 603 (1962); *Auric v. Continental Casualty Co.*, 111 Wis. 2d 507 (1983); *Licata v. Spector*, 26 Conn. Supp. 378 (1966); *Schirmer v. Nethercutt*, 157 Wash. 172, 288 P. 265 (1930).

[37] *R.J. Longo Constr. Co. v. Transit America Inc.*, 921 F. Supp. 1295, 1307 (D.N.J. 1996)( citing Restat 2d of Contracts, § 302.

[38] *Lopez v. Renaissance St. Croix Carambola Beach Resort & Spa*, 70 V.I. 27, 36-37 (Super. Ct. V.I. Jan. 23, 2019).

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.[39]

Therefore, a two-prong test must be employed in order to determine whether one is an intended beneficiary. First, the third party must have standing "appropriate to effectuate the intentions of the parties."[40] If it is deemed appropriate the performance must then satisfy the promisee's obligation to pay money to the beneficiary or the promise intended for the beneficiary to benefit from performance.[41]

¶38     In applying Section 302 to the present matter, the estate planning documents establish a contract between the Defendant and Erik and Jennie. Because the documents named the Plaintiff as one of the intended beneficiaries it is clear that Erik and Jennie intended to benefit the Plaintiff. Therefore, pursuant to Section 302(1)(b) the Plaintiff is a third-party beneficiary that can bring his negligence claim against the Defendant.

¶39     Having now determined that the Defendant owed the Plaintiff a legal duty, the Plaintiff must also establish that the Defendant breached such duty that constitutes the factual and legal cause of the Plaintiff's damages.

¶40     According to the Plaintiff the Defendant drafted trust documents under questionable circumstances which include fraud, conflict of interest, negligence, and undue influence that

---

[39] Restat 2d of Contracts, § 302.
[40] *R.J. Longo Constr. Co.*, 921 F. Supp. 1307.
[41] *Id.*

constitutes a breach of duty that was the proximate cause of the Plaintiff's loss of expected inheritance. (Opp'n. at 24.) Resulting in him suffering injuries that include a loss of expected inheritance and emotional distress. (*Id.*)

¶41    As previously stated the Court finds that the Defendant's performance in drafting the estate documents did not constitute any tortious act. Thus, the Defendant did not breach any duty owed to the Plaintiff. Moreover, the Court finds that the Plaintiff will receive what the testator's intended for him to inherit therefore the Defendant's performance in drafting the estate documents did not result in him losing his expected inheritance or suffering any damages. Therefore, the Plaintiff has failed to establish that the Defendant's performance constitutes negligence. As a result, no genuine issue remains as to Count II of the Complaint. As such the Defendant shall be granted summary judgment as to Count II.

### III. Doctrine of Equitable Deviation

¶42    As to Count III the Defendant claims that he is entitled to summary judgment because the Plaintiff has asserted a claim under the doctrine of deviation, which does not apply to the present matter. (Memo. at 16.) According to the Defendant, the doctrine of deviation allows a court to "direct or permit deviation from terms of a trust where compliance is impossible or illegal", which is not applicable to the 2012 Trust because the terms are not illegal or impossible. (*Id.*)(citation omitted.) The Defendant also claims that the Plaintiff has named the wrong party in his pursuance of this claim because he has no interest in any of the estate documents. (*Id.*)

¶43    Although the Plaintiff agrees with the Defendant's application of the doctrine of deviation he also claims that because he is alleging and intends to prove that Erik did not have the adequate mental capacity to execute the 2007 Trust that the Court can deviate from the terms of the 2007 Trust in order to comply with Erik and Jennie's wishes. (*Id.*)

¶44     In *Hansen v. Gov't of the Virgin Islands* this Court held that under the doctrine of equitable

deviate courts may allow trustees to deviate from the terms of a charitable trust "where compliance

is impossible or illegal or would defeat or substantially impair accomplishing the trust purpose.[42]

However, *Hansen* was decided prior to the establishment of the Virgin Islands Supreme Court,

which as previously mentioned has instructed courts in the Virgin Islands to conduct a three-part

analysis in determining Virgin Islands common law."[43]

### i.     *Virgin Islands Precedent*

¶45     Since the establishment of the Supreme Court of the Virgin Islands, courts in this

jurisdiction have yet to apply the doctrine of equitable deviation. Nevertheless, the court in *Hansen*

did adopt the Restatement (Second) Trust § 381 in its application of the equitable deviation.[44]

There the Court held that equitable deviation did not apply because compliance with the trust terms

was "not impossible or illegal, nor would it defeat or substantially impair the trust's purpose."[45]

However, the trust in *Hansen* was a charitable trust which Section 381 is specifically limited to.[46]

Nevertheless, the Virgin Islands has been willing to apply the doctrine of equitable deviation to

charitable trust when the terms are impossible, illegal, or impair the purpose of the trust.

---

[42] *Hansen v. Gov't of the Virgin Islands*, 53 V.I. 58, 89-90 (V.I. Super. Ct 1999) (citing Rstmt 2d of Trusts, § 387 (2012)).

[43] *Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 600 (V.I. 2014)(citing *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011).

[44] *Hansen*, 53 V.I. 58, 89-90.

[45] *Id.*

[46] *Id.*

### ii. Majority Approach

¶46    Historically it has been held that courts have equitable power to deviate from the literal provisions of a trust to accomplish the testator's purpose when an emergency exit.[47] Overtime the common law doctrine has been codified and boarded by statutory law.[48] As a result, many states have applied the Restatement (Second) of Trust § 167, now replaced by the Restatement (Third) of Trust § 66 along with their own statutory language.[49]

### iii. The Best Rule for the Virgin Islands

¶47    For the reasons stated above, best rule of law for the Virgin Islands is the Restatement (Third) of Trust § 66. Adopting Section 66 is consistent with the majority of other jurisdictions as well as precedence already established in the Virgin Islands. Moreover, in the absence of statutory law, it is in the best interest of the public to adopt Section 66 as a means for the court to address circumstances unanticipated by testators.

¶48    Pursuant to Section 66 courts have the power to "modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision if because of circumstances not anticipated by the settlor the modification or deviation will further the purpose of the trust."[50]

¶49    Applying this rule to the matter at bar, it is clear that Section 66 is not applicable here. Given the record, circumstances have not changed since the creation of the trust to warrant judicial modification. Furthermore, even if the Plaintiff was successful in his claim for tortious interference

---

[47] *In re Wolcott*, 95 N.H. 23, 28 (1948) (citing *Trust Co. v. Glunz, supra; Pennington v. Metropolitan Museum of Art*, 65 N.J. Eq. 11, 55 A. 468; *Curtiss v. Brown*, 29 Ill. 201. Cf. *Citizens' Nat'l Bank v. Morgan*, 94 N.H. 284, 51 A.2d 841; *Longworth v. Duff*, 123 ILL. 258, 263 (1887); Friedman v. Teplis, 268 Ga. 721, 722 (1997);
[48] *City of Augusta v. AG*, 943 A.2d 582 at **591 n. 16(Me. 2008); *see Ike v. Doolittle*, 61 Cal. App. 4th 51, 79 (1998).
[49] Restat 3d of Trust, § 66.
[50] Restat 3d of Trust, § 66(1).

or negligence judicial modification of the trust terms would not be the appropriate remedy. Therefore, the Defendant is entitled to summary judgment as to Count III of the Plaintiff's Complaint.

## IV. Intentional Infliction of Emotional Distress

¶50    The Defendant claims that the Plaintiff has failed to allege any physical harm as required under intentional infliction of emotional distress and that any emotional distress suffered by the Plaintiff was not the result of the Defendant's conduct. (*Id.*)

¶51    Nonetheless, the Plaintiff asserts that his intentional infliction of emotional distress claim is directly linked to his tortious interference with expected inheritance claim. (Opp'n. at 29.) Therefore, the Defendant's involvement with Mona and Julian to disinherit him and the Defendants attempt to cover his wrong constitute intentional infliction of emotional distress. (*Id.*)   In addition, the Plaintiff claims that he has attached an affidavit from himself clearly stating that he suffered physical distress. (*Id.*) Although a "liberal [sic] reading of the pro se complaint does not show physical harm" he is requesting leave to amend the Complaint. (*Id.*)

¶52    This Court has previously adopted the Restatement (Second) of Torts § 46 as the best rule for intentional infliction of emotional distress for this jurisdiction. According to Section 46 "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[51]

¶53    Based on this law as adopted by the Court, the Plaintiff is not required to allege bodily harm in order adoption. Therefore, leave to amend the Complaint to include bodily harm is not

---

[51] Restat 2d of Tort § 46(1).

required. Nevertheless, the Plaintiff has failed to present any evidence that the Defendant's conduct was extreme and outrageous. Nor has the Plaintiff demonstrated that the Defendant intentionally or recklessly caused the Plaintiff severe emotional distress. Rather the Plaintiff merely contends that in drafting the will the Defendant assisted Mona and Julian in disinheriting him. Aside from this conclusory statement, the Plaintiff has not presented a viable claim for the intentional infliction of emotional distress. Thus, there is no genuine issue in dispute as to the Plaintiff's intentional infliction of emotional distress claim, therefore the Defendant is entitled to summary judgment as to Count IV.

## CONCLUSION

¶54 For the foregoing analysis, the Court will grant the Defendant's Motion for Summary Judgment as to the Plaintiff's Complaint.

¶55 Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment as to the Plaintiff's Complaint is **GRANTED**.

**DONE and so ORDERED this** 3 **day of April 2020.**

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk Supervisor II

Dated: _____ 4/6/20 _____

HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**